```
                    UNITED STATES DISTRICT COURT
                      DISTRICT OF SOUTH DAKOTA
                         SOUTHERN DIVISION
```
* * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * *

| | | |
|---|---|---|
| MARGARET A. BENSON, M.D., | * | CIV. 08-4072 |
| Plaintiff, | * | |
| -vs- | * | OPINION AND ORDER |
| SANFORD HEALTH, a South Dakota Corporation; and SANFORD MEDICAL CENTER, a South Dakota corporation, | * | |
| Defendants. | * | |

* * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * *

Pending is Margaret Benson's Fourth Motion To Compel.[1]

## BACKGROUND

After peeling three layers off this disputed discovery onion, one item remains, i.e. an e-mail Benson claims she sent.[2]

> Request No.7: Please provide a copy of any emails from Dr. Margaret Benson to Darla Landeen in approximately June of 2006.

Sanford responded:

> Defendants object to this request as vague and ambiguous in its reference to time. Subject to, and without waiving that objection, defendants are searching to determine whether such email copies exist and may be retrieved.

Benson's justifies pursuing the e-mail because:

> Dr. Benson contends that she sent an email to Landeen after the meeting and asked her about why Tiefenthaler felt he needed a man to replace her. This was the only email Dr. Benson ever sent on the Sanford email system and she testified that she had the receptionist at the Beresford Clinic help her with this because she is not

---

[1] Doc. 120.

[2] Doc. 121, p. 1, Request For Production 7.

>savvy with technology. This is why it is important for the Plaintiff to have the Defendants produce a copy of this email. The subject matter of such an email is extremely important to her case.[3]

Benson argues Sanford's response has been non-response.

>Sanford argues:

>Sanford's e-mail retention and document destruction policies provide that e-mails are destroyed on 90-day cycles. After the 90-day cycle, the e-mail may be retrieved from backup tapes for, at the longest, two months. After this time period, the data on the backup tapes is written over and not retrievable. Thus, e-mails on Sanford's computer network from June 2006 were not retrievable after December 2006 at the latest. The only possible way they could have been retrieved after that time was if someone had saved the e-mail in another fashion, e.g., printed off the e-mail and saved the printed document somewhere or downloaded the e-mail "off" Sanford's e-mail system. When Sanford responded to Plaintiff's request for production, no such e-mails existed on its computer network, but Sanford indicated it would continue to search for such e-mails from June 2006. This search has been carried to the extent it could be for any especially saved e-mails.[4]

## ANALYSIS

In briefing her fourth motion, Benson's counsel engages in counterproductive overstatement and half truth. Counsel were previously discouraged from using overstatement.[5] Benson paints a picture of her own "pure driven snow" innocence and Sanford's dastardly evasion. The picture is not accurate.[6]

---

[3]Doc. 121, p. 2.

[4]Doc. 125, p. 3.

[5]Doc. 46, p. 2. ". . . . Plaintiff's counsel, complaining that the responses are nine months overdue, has described defendants' acts or omissions as: conveniently filed their response the same day; suddenly filed a brief; incredibly; pattern of flagrant disregard of the federal rules; tactically delaying; conveniently left out of defendants' brief; suddenly object; as has been their practice defendants have totally ignored their duty under the federal rules. If these descriptions are well taken, it is a serious matter. If these descriptions are not well taken, it is a serious matter."

[6]Doc. 104, p. 10. Judge Duffy noted: "The court notes that Benson's briefs repeatedly argue that her discovery requests have been outstanding since she made her first requests, in September,

**First Motion to Compel**.

Benson's first motion to compel was about many discovery items, one of which was her Request For Production 7. Benson recalls that her first motion to compel was dismissed as moot "due to the fact" that it "dealt with Defendants' non-response."[7] The fact of the matter is that Benson failed to confer in good faith with Sanford's counsel to resolve the matter before she filed her motion to compel. The parties were directed to confer to try to resolve their discovery disputes. They were also ordered to file a statement setting forth the matters upon which they had been unable to agree, together with briefs explaining their respective contentions.[8] A statement setting forth the matters of disagreement was not filed.[9] The first motion to compel was then denied as moot.[10]

But this is Benson's representation of what happened to her first motion:

---

2008. Docket No. 89. *This is inaccurate*. Benson's first motion to compel was denied as moot, since Benson did not state with specificity which discovery disputes the parties were unable to resolve, and she did not file a brief in support of her position. See Docket Nos. 32, 33, 35. Benson's second motion to compel was granted, *but discovery was not ordered to be produced until a protective order was entered.* This protective order was not entered by the district court until January 20, 2010. Docket No. 61. Benson's third motion to compel was filed on June 25, 2010, *despite the defendants' representations that they did in fact produce responsive discovery both before and following the entry of the protective order.*" (Italics added for emphasis).

[7]Doc 121, p. 3.

[8]Doc. 32, p. 2. "Benson has neither filed the certification required by Rule 37 nor filed information showing compliance with Local Rule 37.1."

[9]Doc. 46, p. 1. Plaintiff filed a statement on April 9, 2009, advising that the parties had conferred and were "currently working on a stipulation for protective order which may resolve some of the discovery disputes between the parties. However, based upon the discussions between counsel, it is likely that not all of the discovery disputes will be resolved by the stipulation. Accordingly, the Court's assistance will be needed to address the remaining discovery disputes at issue."

[10]Doc. 35.

> Due to the fact that Plaintiff's First Motion to Compel Discovery dealt with Defendants' non-response, the Court dismissed the Motion as moot and required the parties to work together to resolve any remaining discovery issues.[11]

Counsel's description is not what actually happened.

**<u>Second Motion to Compel</u>**.

Benson filed her Second Motion to Compel.[12] But the e-mail Request For Production 7 was not involved with her second motion. Benson's misdirection about the e-mail is:

> Unfortunately, Defendants continued a pattern of non-response and delay with regard to discovery. Plaintiff was then forced to file a second Motion to Compel on July 2, 2009. . . . However, Defendants did not change their response to Request No.7.[13]

It is true Benson's counsel repeatedly asked Sanford's counsel to update its response about the e-mail. But it is not correct to intimate that the e-mail was considered by the court on Benson's first motion or that the e-mail was a subject of her second motion.[14]

---

[11] Doc. 121, p. 3.

[12] Doc. 36.

[13] Doc. 121, p. 3.

[14] Doc. 104, p. 11-12. Imposing sanctions on Sanford regarding Request for Production 13, (*not 7)*, Judge Duffy concluded: ". . . Furthermore, in this case, the court does not find that the defendants have failed to obey an order to provide or permit discovery. . . . Benson is *not entitled to attorney's fees* for time spent on her *first or second motions* to compel, or for time spent on requests for production or interrogatories *other than RFP 13*." (Italics added for emphasis).

4

**Third Motion to Compel**.

Benson's Third Motion to Compel was directed at Request For Production 7, among other matters.[15] Judge Duffy ruled:[16]

> . . . ORDERED that as to item number one in the motion to compel, Dr. Benson's request for production of documents number 7, Sanford shall identify to Dr. Benson no later than November 19, 2010, a person or persons who can testify as to Sanford's first knowledge of Dr. Benson's claim, its document retention policy, when efforts were first made to discover and/or preserve any e-mails in any form (electronic or hard copy) covered by request number 7, specifically what those efforts were, what other efforts might be made to discover any such e-mails, and the cost of those other as-yet-untried efforts. Following identification of such person(s), the parties shall arrange for deposition(s) of those person(s) identified by Sanford to take place no later than December 20, 2010. This order extinguishes Dr. Benson's current motion to compel as to document request number 7.

The depositions which Judge Duffy ordered have been taken.[17]

**Fourth Motion to Compel**.

In addition to two other matters, Benson asks again for an order that was denied once before,[18] i.e. "an order establishing as true the information sought by Benson through this discovery."[19] Benson argues "[a]dditional [d]epositions [r]eveal [d]efendants [w]ere [n]ot

---

[15]Doc. 85.

[16]Doc. 103. (Judge Duffy graciously agreed to handle this motion while the undersigned and his wife tended to an urgent medical issue.)

[17]Docs. 121 & 125 generally.

[18]Doc. 104. Judge Duffy ruled about this very issue: ". . . . ORDERED that Plaintiff Benson's request that the court establish as true that (1) that Benson sent an email in June, 2006, to Darla Landeen, the Beresford clinic manager, asking about the source of Tony Tiefenthaler's comment about needing to replace Benson with a male physician; . . . is hereby denied."

[19]Doc. 120.

5

[d]iligent."[20]  In support, Benson offers:

- that Croatt "never searched the hard drive on the computer she was provided" and "was also never shown Plaintiff's Request No.7."[21];

- that Slack "was never shown Plaintiff's Request No. 7," and "no one asked her to obtain any emails involving Darla Landeen," and "that Darla Landeen's laptop that she had been using at the Beresford Clinic was stolen;"[22] and

- that Broekhuis "has never been directed to search for any emails regarding the information included in Request No.7" and "he had never heard of Dr. Benson or her lawsuit until July 15,2010." [23]

Benson also notes that Sanford has produced other e-mails dating back to 2006 despite its assertion that the purge process prevents recovery of the disputed 2006 e-mail.[24]

Sanford offers factual arguments from the depositions of Croatt, Slack, and Broekhuis to support its conclusion that "Sanford has acted reasonably in producing as much information to Plaintiff as it could. Plaintiff has still not identified what further steps in investigation Sanford should have undertaken to locate the e-mail she seeks."[25]  Regarding other e-mails from the same or earlier time frame, Sanford responds "[w]hile it is true that Sanford has produced some other dated e-mails in the literally thousands of pages of documents it has produced to Plaintiff, those e-mails would fit within the rare category of e-mails that had been printed or specifically saved, as opposed to e-mails simply existing on Sanford's computer network."[26]

---

[20]Doc. 121, p. 6.

[21]Doc. 121, p. 7.

[22]Doc. 121, p. 8.

[23]Doc. 121, p. 9.

[24]Doc. 121, p. 9.

[25]Doc. 125, p. 7.

[26]Doc. 125, p. 6.

Federal Rule of Civil Procedure 34 governs, but it does not describe the lengths to which a party must go to search for electronically stored information.[27] Rule 1 provides ". . . [the rules of civil procedure] should be construed and administered to secure the just, speedy, and inexpensive determination of every action and proceeding."[28] Decisions about discovery are discretionary:

> A district court must be free to use and control pretrial procedure in furtherance of the orderly administration of justice. A district court is afforded wide discretion in its handling of discovery matters, and its decisions will be upheld unless, in the totality of the circumstances, its rulings are seen to be a gross abuse of discretion resulting in fundamental unfairness in the trial of the case. Although Cook's broader discovery request arguably could have led to the discovery of additional admissible evidence, the district court's order was not so restrictive as to be considered a gross abuse of discretion.[29]

Benson's counsel took four depositions from three persons as ordered by Judge Duffy for the sole purpose of finding this e-mail, or to learn what else could be done to find the e-mail.[30] She deposed Arlyn Broekuis twice.[31] Broekhuis oversees the entire Sanford IT system for the entire Sanford organization.[32] He has been employed in the Sanford IT system for 28 years, the chief information officer for the last nine years.[33]

---

[27]FED. R. CIV. P. 34(a)(1)(A) & (b)(2)(D) & (E).

[28]FED. R. CIV. P. 1.

[29]*Cook v. Kartridg Pak Co.,* 840 F.2d 602, 604 (8th Cir. 1988) (internal citations and quotation marks omitted).

[30]Doc. 121-8 through 121-11.

[31]Doc. 121-8 & Doc. 121-11.

[32]Doc. 121-8, p. 4.

[33]Doc. 121-8, deposition p. 4; Doc. 121-11, deposition p. 24.

7

**The Hard Drives**

Broekhuis testified Ms. Landeen's laptop was stolen in November of 2006 and never recovered.[34] Even if it was available to search it was "highly unlikely" that e-mail information would have been stored on the hard drive because (1) IT instructs Sanford employees not to save information on their hard drives but rather on the network; and (2) most people wouldn't have the necessary technical knowledge to do otherwise.[35] The computer provided to Landeen after her laptop was stolen has been destroyed or given to a charitable organization and in both cases would have been "wiped clean."[36] Moreover, Darla Landeen herself testified that she did not typically print her e-mails and keep them in files, nor did she normally do something with them other than leave them in her inbox.[37] Benson's complaint that "*no one* has looked . . . on Landeen's hard drives for the email"[38] is artful - there is no hard drive to search.

**The Hard Copy Files**

Dawn Croatt, the Beresford clinic manager who replaced Darla Landeen, searched the Beresford Clinic files for any printed information regarding Dr. Benson.[39] Her search did not reveal the June 2006 e-mail Benson seeks.

---

[34]Doc. 126-3, deposition pp. 36-37.

[35]Doc. 126-3, deposition pp. 33-34.

[36]Doc. 126-3, deposition pp. 33-35.

[37]Doc. 126-4, deposition p. 50.

[38]Doc. 127, p. 1.

[39]Doc. 126-2, deposition pp. 6-8.

**The Network**

Broekhuis testified about Sanford's e-mail retention policy. The policy went into effect in January of 2006.[40] The policy requires e-mails in the inbox, deleted and sent folders to be automatically purged every 90 days.[41] There are also network backup tapes kept which would allow retrieval of an e-mail for an additional two months.[42] After that, the backup tape is written over with new information and it would be "highly unlikely" that anyone could ever retrieve an e-mail unless it was stored somewhere else outside the e-mail system or printed.[43] Under the e-mail retention policy, the latest date an e-mail written in June of 2006 could be retrieved from the network would have been December of 2006.[44] Benson's complaint was filed May 22, 2008.[45]

## CONCLUSION

Benson argues Sanford hasn't done enough to look for her e-mail message, but she has not suggested what else Sanford could reasonably do that has not already been done. Benson has not supplied legal precedent to describe the lengths to which Sanford must go to find the 2006 e-mail. Sanford has searched for the e-mail all it can reasonably be expected to search.

---

[40]Doc. 121-8, deposition p. 8.

[41]Doc. 121-8, deposition pp. 8-9.

[42]Doc. 121-8, deposition pp. 9-11.

[43]Doc. 121-8, deposition p. 18.

[44]Doc. 121-8, deposition p. 17.

[45]Doc. 1.

**SANCTIONS**

Judge Duffy observed when she decided Benson's request for sanctions against Sanford regarding Benson's third motion, that when a motion to compel is granted under Rule 37(a)(5)(A) "[t]he responsibility of a court to assess expenses, including attorney's fees, is mandatory-the rule uses the word 'must' . . . ." Judge Duffy then proceeded to award sanctions against Sanford as a result of Sanford's assumption ". . . that 'informal discovery' through 'personal exchanges' satisfies their obligations to respond to discovery requests . . . ."[46]

The reverse side of the sanction coin applies when the motion to compel is denied:[47]

> If the motion is denied, the court . . . must, after giving an opportunity to be heard, require the movant, the attorney filing the motion, or both to pay the party . . . who opposed the motion its reasonable expenses incurred in opposing the motion, including attorney's fees.

It appears sanctions are justified under Rule 37(a)(5)(B) in favor of Sanford against Benson because:

● it is clear that there are no hard drives in existence where Benson's 2006 e-mail could reasonably be expected to be found,

● it is clear that Sanford's search for hard copies has not located Benson's 2006 e-mail,

● it is clear that Benson's 2006 e-mail could not reasonably be expected to be found on Sanford's network or Sanford's backup of the network,

● Benson knew the above information after taking the four depositions for the sole purpose of finding Benson's 2006 e-mail,

● Benson herself has not suggested where else Sanford could look for the 2006 e-mail, and

---

[46] Doc. 104, p. 11.

[47] Rule 37(a)(5)(B).

● despite that knowledge Benson filed her motion to compel claiming Sanford's lack of diligence.

It is ORDERED that Benson's Fourth Motion to Compel and for sanctions is DENIED.[48]

It is FURTHER ORDERED under Federal Rule Of Civil Procedure 37(a)(5)(B) that plaintiff Benson must file a brief not later than April 5, 2011, explaining why sanctions should not be awarded and that defendant Sanford must file an affidavit not later than April 5, 2011 stating the reasonable expenses, including attorney's fees, it has expended to oppose Benson's fourth motion to compel. Each side may simultaneously file a responding brief not later than April 13, 2011.

Dated this 25th day of March, 2011.

BY THE COURT:

s/John E. Simko

_____

John E. Simko
United States Magistrate Judge

---

[48]Doc. 120.